**In re Donald D. MANNING and Judith E. Manning, Debtors.**

**Tom H. CONNOLLY, Trustee, Plaintiff,**

**v.**

**NUTHATCH HILL ASSOCIATES, Bernard A. Karshmer, Leo Goettelman, Arthur I. Karshmer, and Hazen E. Moore, Defendants.**

**Bankruptcy No. 82 B 1823 M. Adv. No. 83 G 0935.**

United States Bankruptcy Court, D. Colorado.

Feb. 6, 1984.

John D. Phillips, Glenwood Springs, Colo., for plaintiff.

Stephen T. Susman, Denver, Colo., for defendants.

MEMORANDUM OPINION
AND ORDERS

JAY L. GUECK, Bankruptcy Judge.

I. *Introduction*

THIS MATTER comes before the Court pursuant to a Complaint filed by the Chapter 7 Trustee of the above-named debtors in which he seeks an order declaring dissolution and directing windup of a partnership, an order authorizing sale of partnership property free and clear of the interest of the partnership and general partners and for a partnership accounting. The parties have submitted a Stipulation of Facts and legal briefs in lieu of trial. The issue presented is the manner by which a Trustee is to reach a debtor's interest in real property held by a general partnership in which the debtor is a general partner.

The Trustee contends that certain provisions of the Bankruptcy Code, namely § 363(b), (f), (g), (h), (i), and (j), together with the Colorado Uniform Partnership Law, Article 60 of Title 7 of the Colorado Revised Statutes, provide the mechanism to sell the partnership property free and clear of the interests of the partnership and individual partners in order to realize the true value of the debtors' undivided interest in the partnership.

The defendants admit that the Trustee has succeeded to and may sell the debtors' undivided interest in the partnership. However, defendants argue that neither statutory authority nor applicable Colorado law nor the written partnership agreement enable the Trustee to compel the partnership or partners to sell the partnership real property *in toto*.

II. *Findings of Fact*

On August 15, 1969, Bernard Karshmer, Arthur Karshmer, Leo Goettleman, Hazen Moore and Donald Manning formed Nu-

thatch Hill Associates (hereinafter "Nuthatch") as a Colorado general partnership pursuant to a written partnership agreement. Each individual is a resident of the state of Colorado and contributed an equal capital amount at the outset. Hence, each owns a 20% undivided interest in the partnership.

On August 17, 1969, Nuthatch purchased an 88 acre parcel of real property in Clear Creek County, Colorado. Nuthatch holds the title to the real property except for ⅟₁₅ of one acre conveyed to James and Adelaide Behen in 1971 for title clarification purposes. The property is encumbered by a deed of trust in the amount of $35,000 in favor of the former owners, Robert and Agnes Allen. In December of 1982 the property was appraised by a MAI appraiser as having a fair market value of $722,700 and a minimum sale price of $578,200. Partition in kind of the real property among the five general partners is impracticable.

On April 29, 1982, Donald and Judith Manning filed a petition for a relief under Chapter 7 of the Code as joint debtors. Tom H. Connolly was appointed interim trustee and no successor trustee was elected at the § 341 meeting.

The Stipulation of Facts submitted by the parties on October 14, 1983 is adopted herein as further Findings of Fact. Significant among those stipulated facts is the following:

"17. Partition of the Nuthatch *Property* (as distinguished from Nuthatch Hill Associates *partnership*), in kind, among the five equal owners (including the estate) is impracticable in the sense of 'carving up' the Nuthatch Property into five essentially similar shares of separately-owned real estate. Partition of the Nuthatch Property—acquired and owned by the partnership itself, in its name and status—into five equal, undivided tenancies in common is not impracticable.

"18. Sale of (a) the estate's undivided 20% interest in the Nuthatch Hill Associates partnership, or of (b) an undivided 20% interest in the Nuthatch Property, would realize significantly less for the estate than would the sale of either of such interests free of the interests of the other general partners.

"19. The benefit to the estate of such a sale of the Nuthatch Property free of the interests of the other partners in Nuthatch Hill Associates would probably outweigh the detriment to the Defendants (the other partners). Such detriment would primarily consist of the imposition of long-term capital gains taxes upon the other four general partners.

"20. The Nuthatch Property is not used in the production, transmission or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light or power."

These stipulated facts track the four requirements which must be present to sell interests of co-owners in property under 11 U.S.C. § 363(h).

The Partnership Agreement contains particular provisions which should be highlighted. The Agreement provides, in part:

"12. *Voluntary Termination.* The partnership may be dissolved at any time by the request of any partner, in which event the partners shall proceed with reasonable promptness to liquidate the partnership affairs. The assets of the partnership shall be used and distributed in the following order: (a) to pay or provide for the payment of all partnership liabilities and liquidating expenses and obligations other than to partners; (b) to pay debts owed to partners; (c) to discharge the balance of the capital accounts of the partners; and (d) to discharge the balance of the income accounts of the partners. Notwithstanding the foregoing, if such dissolution is not consented to by partners owning a majority of the partnership interests, then the nonconsenting partners shall have the right to purchase the entire partnership interest of the partner or partners seeking to dissolve the partnership at the price and payment terms stated in paragraph 15. Thereafter, the partnership business shall be continued by the successor partnership comprising the remaining partners.

"13. *Right of First Refusal.* If any partner shall at any time propose to sell or otherwise dispose of for a consideration any or all of his interest in the partnership, he shall first make a written offer to sell such interest to the partnership at a purchase price equal to that of the proposed transfer.

.     .     .     .     .

"15. *Default.* If any partner shall fail to contribute his proportionate share of additional capital when required pursuant to Paragraph 5(b) and shall remain in default for a period to ten days, or such additional period specified by unanimous agreement of all other partners, after the date designated for such additional capital contribution, the remaining partners (or one or more of them) who have committed their proportionate shares of such additional capital shall have an option to purchase the entire partnership interest in the defaulting partner at a price equal to 75% of the defaulting partner's capital account."

III.  *Conclusions of Law*

The Trustee claims authority to sell the real property owned by the Nuthatch Partnership free and clear of the interests of Nuthatch and the general partners under two Code provisions. First, he contends that 11 U.S.C. § 363(h) authorizes sale of the estate's interest and the interest of any co-owner in property provided that four conditions specified thereunder are satisfied. Second, he contends that § 363(f)(1) or (f)(5) authorize the sale of property of the estate free and clear of any interest in such property of entities other than the estate.

"When a partner is a debtor in a case under Title 11, the *partner's interest in the partnership* in which such partner is a partner is property of the partner's estate under 11 U.S.C. § 541(a)(1)." (emphasis supplied). H.R. Report 95–595 at page 199, 1st Sess. (1977).

§ 363(h) provides:

"Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, immediately before the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if—

(1) partition in kind of such property among the estate and such co-owners is impracticable;

(2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;

(3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and

(4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

§ 363 does apply in Chapter 7 proceedings. § 103(b).

The courts, interpreting § 5 of the Bankruptcy Act of 1898, held that a bankruptcy court had no jurisdiction to administer partnership assets absent consent of non-bankrupt partners. *Benitez v. Bank of Nova Scotia,* 110 F.2d 169 (1st Cir.1940); *In re Segal,* 157 F.Supp. 232 (D.C.Cal.1957). Further, they held that the only interest held by a bankrupt partner was "The right to demand and receive the individual's interest, if any, in the partnership assets after an accounting and payment of partnership debts out of the property belonging to the partnership." *Turner v. Central National Bank of Mattson,* 468 F.2d 590, (7th Cir. 1972); *In re Dreske,* 25 B.R. 268, 271 (Bkrtcy.Wis.1982); *In re Dixon,* 1 Bankr.Ct. Dec. 1648 (Bkrtcy.Ohio 1975); *Partnership Bankruptcy,* 31 Hastings Law Journal 149, 167 (1979).

In the case of *In re Victory Pipe Craftsmen, Inc.,* 12 B.R. 822 (Bkrtcy.Ill.1981) the bankruptcy court decided that § 363(h) does not authorize a debtor-partner to sell partnership property free and clear of partner-

758

ship and individual partner's interests. The court ruled:

"... [even] if this court found that debtor was a partner in the Venture, it would appear that debtor could not sell the property pursuant to 11 U.S.C. § 363 in light of the Illinois Supreme Court's opinion in *Lueth v. Goodknecht,* 345 Ill. 197, 177 N.E. 690 (1931) which held that 'The interests of the partners in firm property is neither that of joint tenants nor of tenants in common.' *Section 363(h) provides for sales of co-owners interest only* where such *property consists of 'an undivided interest as a tenant in common, joint tenant or tenant by the entirety',* indicating Lueth is directly in point." (emphasis added). *Victory Pipe Craftsmen,* at page 824.

The case of *In re Dreske, supra,* is also relevant to the legal issues raised herein. In *Dreske, supra,* an individual partner filed a petition under Chapter 11 of the Code. The partnership held real property and, subsequent to the bankruptcy, the property was foreclosed upon. The bankruptcy court was called upon to determine the effect of the automatic stay on the real estate foreclosure action. In reaching its decision that the stay did not apply, the court declared:

"What both parties have overlooked is the primary rule in bankruptcy cases, in considering a problem involving partners or partnerships, that *a partnership is a distinct legal entity separate and apart from the partners who formed it.* 1A Collier on Bankruptcy (14th ed.) Para. 5.03; *Turner v. Central Nat'l Bank,* 468 F.2d 590 (7th Cir.1972); *Liberty Nat'l Bank v. Bear,* 276 U.S. 215, 48 S.Ct. 252, 72 L.Ed. 536 (1928); *In re Aboussie Brothers Construction Co.,* 3 CBC 2d 684, 8 B.R. 302, 7 BCD 309 (D.C.1981). The Bankruptcy Reform Act of 1978 continues the entity principle. The very availability of the bankruptcy liquidation and reorganization processes to partnerships is a recognition of their existence as entities. Rosenberg, Partnership Reorganization Under the Bankruptcy Reform Act, 56 N.Y.U.L.Rev. 1173, 1177 (1981). Under the Bankruptcy Code, with some ex-

ceptions, a 'person' may be a debtor under chapter 7 (s. 109(b)) or chapter 11 (s. 109(d)), and a partnership is a 'person' as defined in s. 101(30) of the Code.

"When Dreske filed under chapter 11, a bankruptcy estate was created, comprising all of Dreske's *personal* legal or equitable interests in property as of the commencement of the case (s. 541), and it is to that estate that the automatic stay of s. 362 applied. *Dreske had no interest in the real estate which was the subject of the foreclosure action.* As a matter of fact, the schedules filed by Dreske list no real estate whatsoever as belonging to him. The only interest that he had was the right to demand and receive the individual partner's interest, if any, in the partnership assets after an accounting and payment of partnership debts out of the property belonging to the partnership." (emphasis supplied). *Dreske, supra,* at pages 270–271. *See also, In re Gagnon,* 26 B.R. 926, 929 (Bkrtcy.Pa. 1983).

Although general partners have a right in the specific partnership property as tenants in partnership, C.R.S. § 7–60–125, "the incidents of this tenancy are so negligible that ownership of the property is, for all practical purposes, in the partnership, not the partners." *Law of Partnership,* Crane and Bromberg (1968) § 40 at page 228. The partnership holds title to the real property and if the entity theory of partnerships is respected, the general partners are not really co-owners of the *property itself. See,* C.R.S. § 7–60–108. The Trustee argues that when a partnership is dissolved the partners' interest as tenants in partnership is extinguished and they become tenants in common. I disagree. The Trustee has not cited authority for that position. It is my conclusion that upon dissolution, the partners remain tenants in partnership pending windup and termination. *See, Law of Partnership,* Crane and Bromberg (1968) § 73, *et seq.*

Further, I cannot legislate to stretch the language of § 363(h) to authorize sale of

undivided interests in a tenancy in partnership. Statutory analysis begins with the statute itself. *Consumer Product Safety Commission v. GTE Sylvania,* 447 U.S. 100, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980); *Touche Ross & Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979). Under the Act such a sale by the Trustee was not possible. *Segal, supra.* I find no clear Congressional intent to the contrary. If one examines the genesis of § 363(h), it appears that Congress was concerned about changing rules regarding marital interests in property. House Report 95–595 at page 177, 1st Sess. (1977), U.S.Code Cong. & Admin.News 1978, p. 5787.

Accordingly, I hold that § 363(h) is not an available mechanism by which the Trustee may sell the real property of the partnership in the manner he desires because the parties are *not* tenants in common, tenants by the entirety or joint tenants and the property of the debtor-partner's estate is his *undivided interest in the patnership.* C.R.S. § 7–60–108; *In re Dreske, supra.*

The Trustee's next contention is that the sale of partnership real property is authorized under 11 U.S.C. § 363(f).

§ 363(f)(1) and (f)(5) state:
"The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—
(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest; ..... or ....
(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest."
As noted above, the Trustee contends that applicable non-bankruptcy law authorizes such a sale.

However, the defendants argue that § 363(f) is inapposite because it primarily covers situations involving liens. I disagree. § 363(f) speaks in terms of selling property free and clear of *interests* in such property. The statutory language is broader than the construction urged by the defendants. Additionally, § 363(f)(4) specif-

ically sets forth the requirements to be met when liens are involved. In my view, this argument of the defendants is without merit.

A brief review of applicable non-bankruptcy law appears necessary.

When a general partner files a petition for relief under the Bankruptcy Code the partnership is dissolved. C.R.S. § 7–60–131(1)(e) (as amended 1982 cum.supp.). Upon dissolution the partnership is not terminated; rather, it continues until the partnership affairs are wound up. The partners who have not wrongfully dissolved the partnership, except a bankrupt partner, have the right to wind up the affairs of the partnership, but any partner or his legal representative, upon cause shown, may obtain winding up by the court. C.R.S. § 7–60–137. C.R.S. § 7–60–138 specifies the manner in which partnership property is applied when the partnership is dissolved. C.R.S. § 7–60–138(1) is apposite here because the partnership was not dissolved in contravention of the partnership agreement. *See,* ¶ 12 of the Agreement and C.R.S. § 7–60–131(1)(b) (as amended 1982 cum.supp.).

Pursuant to C.R.S. § 7–60–138(1) and *Davis v. Davis,* 149 Colo. 1, 366 P.2d 857 (1961):
"It is a general rule that in an action for a partnership accounting and dissolution the entire partnership property will be converted into cash. (citations omitted).... The rule is especially applicable when there are partnership debts; in fact, at least one court has stated that a partition of partnership property can only be made when there are no partnership debts owing to third parties. (citations omitted).... C.R.S. '53, 104–1–38, embodies the essence of the same rule by providing that in cases of dissolution, *unless otherwise agreed,* each partner as against the other partners may have the partnership property applied to discharge partnership liabilities, and the surplus applied to a cash payment of any amount owing to the respective partners. (citations omitted).... A sale of partnership property provides the best method not

only of determining the value of the property, but also of discharging existing partnership indebtedness and precisely settling the account of the partners out of the surplus." *Davis, supra,* at 5, 366 P.2d at 859 (emphasis added).

By virtue of these pronouncements, the Trustee claims that he can sell the partnership property free and clear of all interests.

However, both the common law, as expressed in *Davis, supra,* and the Colorado Uniform Partnership Act (specifically C.R.S. § 7–60–138(1)) are expressly subject to a contrary agreement of the parties. The partners of Nuthatch provided for such a contingency in ¶ 12 of the Partnership Agreement. That paragraph states that if the voluntary dissolution is not consented to by a majority of the partners, the non-consenting partners have the right to purchase the entire partnership interest of the partner who dissolved the partnership at 75% of that partner's capital account.

Additionally, as previously discussed herein, the interest sought to be sold is the interest in *real* property. That is not "property of the estate" as contemplated in § 363(b) and (c), to which § 363(f) refers. The "property of the estate" is the debtor's interest in the partnership, as a tenant in partnership.

Therefore, the Trustee may not use § 363(f)(1) or § 363(f)(5) to sell the real property free and clear of the interests of other entities because applicable non-bankruptcy law does not permit such a sale. Further, these entities cannot be compelled, in a legal or equitable proceeding, to accept a money satisfaction of their interests.

However, because of the stagnant nature of this bankruptcy proceeding, I will direct the Trustee to wind up the affairs of the partnership unless, within ten days of the date of this opinion, the remaining partners exercise the option contained in paragraph 12. Manning does have the right to demand and receive his interest in the partnership assets after an accounting. The partnership has been "dissolved", not by virtue of a voluntary dissolution under the Partnership Agreement, but by operation of 1973 C.R.S. § 7–60–131(1)(e) (as amended 1982 cum.supp.). The partnership affairs should now be wound up and the partnership terminated pursuant to the Colorado Uniform Partnership Act and the Partnership Agreement. Once Manning has received his share, distribution shall occur pursuant to the law contained in 11 U.S.C. § 701 *et seq.*

By reason of the foregoing authorities, IT IS ORDERED:

1. The Trustee's Complaint for an order declaring dissolution and directing windup of Nuthatch is granted;

2. The Trustee's Complaint for a partnership accounting is granted;

3. The Trustee's Complaint for an order authorizing windup of the partnership affairs will be granted, unless the remaining partners exercise their rights under paragraph 12 of the Agreement within ten days of the date of this Order;

4. The Trustee's Complaint for an order authorizing sale of partnership property free and clear of the interest of Nuthatch and it's general partners is denied.